The next matter is the Cross Appeals 23-1400 and 23-1463. The first part will be case number 23-1400, Adriana Wadsworth v. Chuck Nguyen. At this time, would counsel for the appellant, Cross Appellee Nguyen, please introduce himself on the record to begin. Thank you. Good morning. May it please the Court. My name is John Wall and I represent C.T. Nguyen, who is an appellant and Cross Appellee in this matter. As I think we established off the record, we're going to initially address the Court on Mr. Nguyen's appeal and then we'll move to the Cross Appeal. I'd like to reserve two minutes, if I may, Your Honor. You may have two minutes. Thank you. As the Court is no doubt aware from the briefing, the plaintiff in this case is a former high school student who alleged that my client, Mr. Nguyen, a school social worker, failed to protect her from harassment by the school's principal, Andrew Cavanaugh. As the plaintiff confirms in her brief on appeal, the alleged harassment by Mr. Cavanaugh ended on the date the school district superintendent suspended him pending an investigation. And the record reflects that suspension occurred on November 5th of 2017. The plaintiff asserted tort claims and a constitutional violation arising out of this failure to protect by Mr. Nguyen. The District Court granted summary judgment on the federal claims, which will be the subject of the Cross Appeal, but denied him summary judgment on tort claims based on a couple of defenses available to him under the Maine Tort Claims Act. Mr. Nguyen has appealed that decision on the grounds that the Court erred in finding that the plaintiff satisfied the notice requirement of the Maine Tort Claims Act as it pertains to her claim against Nguyen, and second, that Mr. Nguyen is not protected by discretionary function of immunity. It's our position, Your Honors, that we think the notice issue is dispositive, really, of the tort claims. Yes, Your Honor. I think there's a significant issue of whether we have interlocutory appellate jurisdiction here. And thank you for briefing the issue. That was quite helpful. Are you familiar with the Andrews v. Department of Environmental Protection case by the Maine Law Court? It's a 1998 case. I believe I am generally familiar with that one, yes, Your Honor. In that case, which is not a Maine Tort Claim Act case, but a 1983 case, the Maine Law Court adopts the Supreme Court Johnson analysis and Barron's analysis. And therefore, at least for 1983 cases, I would think it wouldn't be different for state law immunity purposes. The Maine Law Court has said there is no interlocutory appellate jurisdiction from denial of summary judgment where the material facts are in dispute. And the district court has found that the material facts are in dispute, and that's the reason for denial of summary judgment, unless the defendant has stipulated that on the facts it's willing to accept the plaintiff's version of the facts for purposes of immunity. There is no such stipulation in this case. As I understand what the district court did, it didn't make a flat ruling as a matter of law on the two immunity claims, the notice and the discretionary function, but rather said on the facts adduced in the summary judgment papers, I can't enter a summary judgment, there are facts in dispute. If that's an appropriate characterization of what the district court did, then it would seem we have no interlocutory appellate jurisdiction. So let's start there, okay? And I'm happy to address that, obviously, Your Honor, as we did try to break the issue. I break it down a little differently between the notice issue and the immunity issue. I agree that the immunity issue involves more facts and is closer to the issue that you're raising there. I think the notice issue is really undisputed in terms of what notice was served, what it said, and the requirements of law in terms of what the notice must provide in order to be effective under the statute. I thought the district court referred to the fact that your client was put on adequate notice because the school system and various of its high-level officials with whom your client regularly worked and in fact reported to had been served with the notice, and under those circumstances, and I think you haven't stipulated to any of that, there remained a kind of factual question about the adequacy of the notice, if you look at the function that the notice was meant to serve. And I appreciate what you're saying, Your Honor. Our position with regard to that would be that we believe the notice requirement, of course, is really geared towards the entity and giving the entity an opportunity to avoid the expense of litigation by going through an investigation, deciding whether to settle. Our argument on this case is that there's no dispute as to the notice that was actually served on the district in this case, that that notice did not indicate that there was any claim being made based upon a failure to protect or any claim being made against any employee of the district other than Mr. Cavanaugh, that under the standards that the law court has required, basically, applying 8107's notice requirements, it is our position that that failure to identify that theory of recovery, that basis for liability, and failure to identify anyone other than Cavanaugh results in a bar of any claim against Mr. Wynn or any other employee. So you view this as a pure issue of law determined by the text and the law court decisions? We do, Your Honor. We do, Your Honor. Okay. Are there any law court cases that say you need to consider the purposes of the notice and the overall facts as opposed to a strict rule that you have to name each defendant? At a point, you give notice because, you know, at that point, everybody's investigating. Yeah. I believe that the law court's decision in Foucher, which was many years ago, applying the main tort claims act notice issue, set forth what is required, and I'm not aware of something as specific factually to our situation with the law court in terms of saying failure to identify a theory of recovery, a basis for recovery, and a whole defendant or set of defendants, potential defendants, on that theory is... Okay. Well, it's pretty clear that the district court didn't agree with your reading of main law in this area. And I think, Your Honor, our position is that it's because the court relied upon the wrong case, a case that is not factually similar to this case, that being the Cacates case, where, in that case, the law court was dealing with a notice of claim that identified what the theory of recovery was, negligent destruction of property, and identified generally who was involved, which were the custodians. And our argument is that's not like the notice in this case, because the notice in this case doesn't identify a theory of failure to protect or any such tort liability for the part of anybody other than Kavanaugh, and doesn't identify Kavanaugh or anybody else generally. Thank you. Thank you, Counsel. At this time, Counsel, for the... Apolli Wadsworth, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court. Eric LeBlanc on behalf of Adriana Wadsworth, the appellee and cross-appellant in this matter. Hadn't you better deal with the jurisdictional question first? Well, yes, Your Honor, and I take your point well. There are no stipulations of fact here, and when the lower court's decision is read... He says that doesn't matter, that there's an error of law in how the district court read the main law court and text of the notice statute. Yes, and the law itself says that the notice shall not be held invalid or insufficient by inaccurately stating the time, place, nature, or cause of the claim or otherwise, unless it is shown that the governmental entity was in fact prejudiced thereby. The purpose of the notice provision is to allow the district to evaluate the claims, as well as for purposes of defense and settlement of the claims. This case is a little interesting insofar as when the claims accrued, it resulted in an investigation in November of 2017. That investigation was performed, and there are details of that investigation throughout the record. That investigation included speaking with the police. Therefore, what? Well, not only the police. Therefore, what? Therefore, Mr. Nguyen was involved in that investigation. So there's no prejudice? There's absolutely no prejudice because they had already investigated these claims months prior to the notice being sent, and the main issue relating to the notice. Then why didn't you name him in the notice? The largest portion or some portion of Mr. Nguyen's liability stems from his actions within and post-investigation, which we didn't have knowledge of. There was no knowledge that the superintendent of schools had informed Mr. Nguyen not to contact Ms. Wadsworth. There was no knowledge at that point. So when he's moving beyond that issue and contacting Ms. Wadsworth multiple times, he's attempting to have her sign an affidavit stating that the principal did nothing wrong. Okay, I've got the point. And also I will say there is a case out of the District of Maine. It's Leonard B. Inhabitants of Van Buren, which stands for the proposition that plaintiff's failure to identify all defendants sued or fully specify their wrongful conduct in notice was nonfatal as the description of wrongful conduct. Is that in your brief? It is. The other issue on notice, again, and we've already dealt with it, is there was no prejudice here. And there has been no prejudice stated, and there's no evidence in the record that the school in any way even attempted to resolve these claims at that time. Moving to the discretionary function immunity, I would just go through the darling factors as they're listed. And again, what we're talking about here is Mr. Nguyen's behavior of normalizing the principal's sexual harassment of Ms. Wadsworth and his post-investigation behavior where he, again, is attempting to convince Ms. Wadsworth to transfer schools, to sign an affidavit supporting Mr. Kavanaugh, and telling her to apologize to Mr. Kavanaugh's family. Counsel, your opposing counsel says that it should matter to the legal analysis whether during that time period that you're discussing Mr. Nguyen initiated the meetings with your client or your client initiated the meetings with him. Do you think that matters legally? How many of those meetings were, in fact, initiated by Mr. Nguyen? So, legally, I don't think it matters. When we look at the directive that was given to Mr. Nguyen, it was have no contact with Ms. Wadsworth. He did it either way. Whether she reached out or he reached out, it was still inappropriate. It was still against the orders of the superintendent in this case. In addition, we're at summary judgment, so if there are material facts at issue about that behavior and who contacted who and whether that's appropriate, that's an issue for a jury. Factually, Mr. Nguyen initiated the majority of the communications. I think all of them, but I can't be entirely certain. Mr. Nguyen reached out to Ms. Wadsworth on Facebook Messenger. Those Facebook messages are contained in the appendix. In addition, Mr. Nguyen grabbed or took Ms. Wadsworth from the school hallway to discuss the actions that he suggested she take relating to post-investigation activities, such as, as we've already discussed, meeting with or signing an affidavit provided to her by Mr. Kavanaugh's lawyer saying he did nothing wrong. Also, when Ms. Wadsworth received information from Mr. Kavanaugh's family, Mr. Nguyen's suggestion was, well, you should apologize to them. And the reason you should apologize to them is so you can maintain a relationship with Mr. Kavanaugh going forward. So those facts certainly don't meet the four steps of the Darling Test. It starts with, does the Challenge Act omission or decision necessarily involve a basic governmental policy program or objective? That type of behavior and the behavior that occurred even prior to the investigation of normalizing sexual harassment, which was violative of the school's own policy, certainly does not involve that type of work, work within the policies and the governmental objectives of the school district. The second of the Darling factors is, is the question to act on omission or decision essential to the realization or accomplishment of that policy program or objective as opposed to one which would not change the course or direction of the policy program or objective? Again, some of the behavior we're talking about here is... Counsel, if we have no jurisdiction, we don't get into this issue, correct? Correct. And assuming you get to a jury and assuming a jury decides in your favor, then Mr. Yin will have the right to challenge the jury determination based on the four factors. And the facts at that point may have changed a little bit. Understood, Judge. Okay. So all you are arguing for here is there was no error in denying summary judgment on the facts as they now exist? As they exist at the time of summary judgment, correct. And I will stop proceeding through them if Your Honor would prefer. Okay. Thank you very much. Yes, again, this is John Wall on behalf of Appellant C.T. Nguyen. Just very briefly addressing a couple of points made by my co-counsel. The investigation to which he refers was an investigation of Mr. Kavanaugh, not an investigation of Mr. Nguyen. That is because Ms. Wadsworth at that time, nor at the time of filing a notice of claim, suggested that there was any liability on the part of Mr. Nguyen, or even misconduct for that matter. The suggestion that she was unaware of Mr. Nguyen at the time she did her notice of claim and his conduct, which she eventually included in her complaint, is obviously, we believe, contrary to the face of the complaint, which reflects her alleged personal involvement in all of the events which she claims resulted in her claim against Mr. Nguyen. So the idea that she wasn't aware of his involvement at the time she asserted her notice of claim on the district simply doesn't make sense. The last point I would make is with regard to the post-investigation alleged conduct by Mr. Nguyen, this goes in part to the immediate appealability issue. It's our position that all of that conduct is not material to the claims against Mr. Nguyen, for the simple reason that if the claims as they're pled in the complaint are based upon a failure to protect from Mr. Kavanaugh's harassment, and Mr. Kavanaugh's harassment ended by her own admission on November 5th, 2017, conversations she may have had with him after that day, other types of discussions are simply not material to the alleged failure to protect. Therefore, to the extent the Court relied upon those type of facts, it's sort of the materiality issue which the Court has addressed in Saussure and Plumhoff in cases of that nature. If there's nothing further, thank you, Your Honor. The second part of the argument is number 23-1463, Adriana Wadsworth v. M.S.A.D. 40-R.S.U. 40, et al. At this time, would counsel for the appellee, Cross Appellant Wadsworth, please introduce himself on the record to begin. Good morning again, Your Honors. May it please the Court. Erica Blank, on behalf of the appellee, Cross Appellant Adriana Wadsworth, may I reserve three minutes for rebuttal? You may have three minutes. Thank you, Your Honor. This case is about a 60-year-old high school principal, Andrew Kavanaugh, who sexually harassed a female student, Adriana Wadsworth, on a near daily basis during her junior and senior years. Counsel, we're not a jury. We know the facts. Can you get to the legal issues? Of course. Judge, I would like to start with the Title IX claims which have been brought against the school district. Under Title IX, we need to make a showing that a single school administrator with authority to take corrective action had actual knowledge of the harassment and treated it with deliberate intent. In this case, we submit that Assistant Principal Tamara Philbrook had actual notice. We also submit that school social worker Mr. Nguyen had actual notice. The school district claims that the idea of corrective action is somehow correlated to disciplinary ability. That's not what the case law stands for. In fact, the Code of Federal Regulations says that the appropriate person standard relies on someone who can collect and coordinate a response to reports of harassment. It also says that... Can we start parsing this more finally? Of course. I think you are appealing from the district court's finding that although the, I think the district court said both Assistant Principals were persons with disciplinary ability, but they did not have actual knowledge. I think as to the social worker, the district court found he was not a person with authority. All right. So let's divide it up and tell us why you think the Assistant Principals had actual notice as the term is used in Title IX. Sure. So, Assistant Principal Philbrook witnessed directly the harassment at issue. Assistant Philbrook witnessed on numerous occasions Mr. Kavanaugh referring to Ms. Wadsworth with pet names and sexualized and gendered nicknames such as Cupcake, Lady Time. In fact, Ms. Philbrook actually engaged in the same behavior when she followed up Mr. Kavanaugh's statements calling Ms. Wadsworth a pretty girl and a slut. A pretty girl and top shelf in relation to a prom date. There's ample evidence in the record that Ms. Philbrook was informed that Mr. Kavanaugh was texting with Ms. Wadsworth. There's questions as to whether the content was shared, but there were numerous texts between the two. In a meeting with Mr. Wynn, Ms. Wadsworth indicated that the fact that Mr. Kavanaugh called her Cupcake made her uncomfortable. At that point, when that statement was made, Ms. Philbrook was also in the room and heard that. Counsel, is your position that the evidence that's in the record is sufficient to show actual knowledge of actual harassment or sufficient to show that there was a substantial risk of harassment? Both, Your Honor. And why do you think it's enough to show the first? Because she's directly witnessing statements that not only go against the definition of Title IX's sexual harassment definition, they go directly against the school's definition of sexual harassment. The school's definition of sexual harassment includes, in part, comments or verbal conduct that is gender based that interferes with the student's education. That's the school's own policy. Ms. Wadsworth was uncomfortable with those nicknames, and in fact, in certain instances, she engaged in that commentary as well. I'm sorry. Are you seriously arguing that the use of terms like Cupcake, whatever the others were, are sufficient to require, under Title IX, an investigation? Not only those. The facts under Title IX for actual knowledge have to be taken into account while looking at the totality of the circumstances. Okay. I thought your argument was on a totality of all of the facts known to the assistant principal. You at least got to a jury. Correct. Well, that's not the answer you just gave. Okay. You know, this kid is very sharp, so on and so forth. What are the other specific facts known that you think constituted actual knowledge? Sure. I think the most damning instance was a meeting with the school resource officer in September of 2017, when the school resource officer stopped Ms. Wadsworth driving a car ready to go to school. Ms. Wadsworth's car was registered to Principal Cavanaugh. At that point, he called Assistant Principal Philbrook over, and they had a conversation. Mr. Spear, the school resource officer, informed Ms. Philbrook that she was driving in her car registered to Mr. Cavanaugh, and in response, Ms. Philbrook said,  And then she went on and told Mr. Spear about the fact that Mr. Cavanaugh had requested Ms. Wadsworth move into his home. And the response from Ms. Philbrook was, Well, I heard that his wife said, And when was that conversation? That conversation was in September of 2017. No, not with the school resource officer, but about the wife's comment. That was in the same conversation. That was Ms. Philbrook relaying that comment to Mr. Spear. Yes, but when did she acquire that knowledge of the wife's statement? Ms. Philbrook denied making that statement. The record doesn't show. Your argument is that, because I believe the date is September 19, if I have it correctly, so your argument is that at least about approximately six weeks before the investigation began, there was actual knowledge of actual harassment, not just a substantial risk. Correct. In addition, from that meeting, there was an email sent from the school resource officer to the chief of police, referring to Mr. Cavanaugh as the pervert principal. In addition, one of the other issues is Ms. Philbrook was what made well aware, oftentimes, that Ms. Wadsworth was being called out of class by Mr. Cavanaugh regularly. Ms. Philbrook approached Mr. Cavanaugh, asking him to please stop doing so. He apologized. He made a statement that he would stop doing so, and it continued on in the future. And when was that? That was in May of 2017. Did she observe after he had said, I'll stop doing it, that the principal continued to do it? There was still knowledge within the school. I don't believe the record is clear as to whether Ms. Philbrook observed it, but teachers continued to complain that Ms. Wadsworth was being taken out of class. Complained to whom? Presumably the assistant principals, because that's who is responsible for attendance. Are there facts in the record that show that? I believe it's in Ms. Philbrook's deposition testimony. That over this whole time period, she got complaints from other teachers? Yes. I will only make the brief point that Mr. Nguyen was also a potential appropriate person, because Mr. Nguyen, again, corrective action is the ability to potentially step in and stop the activity. Is that argument before the court here, I know that was dealt with below in the motion to dismiss, whether Nguyen was an appropriate person? That's the appropriate person under the equal protection clause? Yes, I'm sorry, I'm skipping. Isn't your counsel arguing that you waived this particular argument and appeal, or have I misunderstood that? About Mr. Nguyen being an appropriate person? I don't believe so. I think it was briefed in both the lower court and in our brief. Okay, so it's about a different aspect of your argument about him. Can I ask, does it make any difference if the assistant principal that the school system says was not an appropriate person, but the district court said that's an issue of fact, and if you win on actual notice, does it matter? It doesn't matter. We only need one person, Judge. Well, I wondered if it mattered as to the time periods involved, whether the reason you want to go after the social worker is he may have had earlier knowledge than the assistant principal. Again, based upon your Honor's direction of nicknames, he had knowledge of that significantly earlier, but I can move on from that point. Moving next to the equal protection claims against the school district, there's two bases for a claim here. Failure to train and an unconstitutional policy. The failure to train claim is fairly clear-cut. Mr. Cavanaugh was the school's Title IX administrator responsible for training staff relating to sexual harassment and reporting. Mr. Cavanaugh testified with no doubt that he never trained anybody. He said he wasn't qualified to train anybody. The school has no record of any trainings. All they have is testimony saying, we attended a PowerPoint presentation and there's no record of what that PowerPoint presentation contained. There was no statement in any way telling any staff or anybody else what to do in the instance when the principal and the Title IX coordinator was the actual harasser. That caused and created a situation in which there was nobody who knew who to report this issue to. Counsel, I thought the record showed, though, that the assistant principals testified, and please correct me if I'm wrong, it's a big record, but that they testified that they knew very well what they were supposed to do. They were supposed to go to the superintendent if the principal was accused of harassment. Their testimony was kind of all over the map, and we cite in our brief Ms. Philbrook said you should go to the principal or the superintendent. Ms. Peace said you didn't know. She said they should go to the principal when the principal is the person accused of harassment? Yes. Ms. Peace, the other assistant principal, testified that she wasn't sure who to report it to when the harasser was the principal. However, she presumed it was the superintendent. Mr. Wendt said you want to go to the affirmative action coordinator within the superintendent's office, but not the superintendent. These different standards, these different ideas of whom to report this issue to clearly shows an inadequate training, and the fact of the matter is there's no fact in the record that shows the school did actually give any training. Well, what about the PowerPoint? Mr. Cavanaugh draft made the PowerPoint, and he said that he's not qualified to train, and he didn't train anybody on this issue. He didn't produce the PowerPoint because it was in the computer that was discarded at the end of his employment. I thought on this record, the issue really isn't they didn't know who to bring the principal to. It's pretty obvious who you would go to. I thought the real issue was whether they were under an obligation to bring the problematic behavior to the attention of someone, and they didn't do it. So, I'm having a little trouble seeing why your equal protection claim matters in this case at all. Well, again, Your Honor, that brings us to the second piece of that claim, which is the unconstitutional policy. The policy states that any suspected sexual harassment that was suspected by the staff must be reported to the building principal. That's all it says. It doesn't say a building principal. It doesn't say building principals. It says the building principal. I still don't see how that helps your case very much. Well, the initial report of sexual harassment, nowhere in the policy was it supposed to be brought to the superintendent. It was supposed to be brought to the building principal. Yes, but who they report to when they don't report to anybody may be less important than their failure to raise the issue with somebody in the chain of command. And I would agree with that, too, Your Honor. I see I'm out of time. Thank you, Counsel. At this time, would Counsel for Cross-Appley, MSAD 40, Melissa Huey, please introduce herself on the record to begin. She has a five-minute response. May it please the Court, Melissa Huey for MSAD 40. I have five minutes, so I'm going to try not to talk too staccato, but there are a number of things that I want to say in response to what the plaintiff's counsel has said. Do you want to first start out by just addressing the actual knowledge test? I'm assuming that's on your list. Yes. And I think there are a couple of things that are really important here. This was decided on a motion for summary judgment. The summary judgment record in Maine consists of the statement of material facts, the responsive statement of material facts, etc. And so what we need to look at when we're deciding whether the district court committed error in his decision that the district is entitled to judgment as a matter of law is the facts in those statements. And what we've heard from counsel is not what the facts in those statements say. There is no statement of fact, no responsive statement that says that Tamra Philbrook witnessed directly sexual harassment on numerous occasions. That's obviously not the test. And that raises the legal question. It is clear that the actual knowledge requirement was meant under the Supreme Court case law to avoid any constructive knowledge construction of Title IX. That is different than whether the facts give rise to a Title IX duty to investigate. The school system's position seems to be unless you see actual harassment, there is no obligation to further. I may have misunderstood your position, but that's what it seems to me to be what you're arguing. Tell me why I'm wrong. That is not what we're arguing. And I think that the school district and most school districts understand that if there's information they have that leads them to believe that there may be a Title IX violation, they have the obligation to look into it. There is a liability of the funding recipient for sexual harassment. And that we need to be I would submit to the court, based on what this court has said and the Supreme Court has said, we need to be precise. There has to be an appropriate person with actual knowledge. Okay. Actual knowledge. Name calling, driving the superintendent's car being called out of class by, sorry, the principal's car by the principal. But most tellingly, the wife's comment when the question of her moving into the principal's I read into his home I think one easy translation of the wife's comment is oh, if he's going to have a high school girl move in I'm going to have my own boy toy move in. So why isn't that enough? I have actually three responses to that. The first is that although that would be one reasonable way to read that so it could be a red flag, there's a difference in the law between something being a red flag and rising to the level of actual knowledge. I think that a statement by a wife, first off, he's having her, the suggestion is that he's going to move into the house of the family. So it doesn't seem like that's a sexual thing. It seems like that is what he was claiming which was that he was trying to support this student. I also think that it's important, as I said when I started, to look at what the record actually shows about what Ms. Philbrook knew. I just listed four things What do you say the record shows as to each of those things? The record does show that there were comments about her being a pretty girl and Ms. Philbrook knew that. The record does show that there was a complaint from teachers pretty early on about him pulling the student out of class too often. The explanation being that it's not uncommon for administrators to pull people out of class. But I don't think the record goes much further than that in terms of what Ms. Philbrook said. May I have two more minutes to make two points? Would I make them very quickly? That's why I only asked for two minutes. The first point is I think we also, it's, my contention is that Ms. Philbrook is not an appropriate person because she has no, she is a subordinate of the principal there are no cases that say that somebody who is a subordinate has the status of an appropriate person because they can't take corrective action. The second thing I just wanted to point out is that it is in fact our argument that the plaintiff has waived the argument that Mr. Wynn is a appropriate person. Thank you very much. Just if I may on that, waived that argument because that decision was made at the motion to dismiss level and then wasn't appealed as part of this? It was not appealed, it was not, the complaint was not amended and it was not argued to the district court so it's been waived as our position. Thank you. Thank you counsel. At this time would counsel for the Cross Appellee Nguyen please introduce himself on the record. He has five minutes. Thank you. May it please the court against John Wall on behalf of this time Cross Appellee C.T. Wynn. I'm going to be very brief. We've in our submissions have attempted to address both the issues raised with both regard to the protection claim which was dismissed and with regard to the substance of due process failure to protect claim that was the subject of the summary judgment. Counsel, is it correct that Ms. Wadsworth never accused your client of sexual harassment, correct? That's correct. So I'm just wondering what your understanding is then of what an equal protection claim would be if there was no accusation against him for sexual harassment. Well that's the point that we and the court ended up going with the idea that there is not a comparator that was done. So I think the judge did it at a different level of the analysis saying that since there's no allegation of differential treatment based upon a suspect classification like sex that it did have to get to the next step which was is this conduct even something which would give rise to a basically a Section 983 claim for harassment. On the substance of due process claim as we briefed, I think that given the sparsity of the argument presented with regard to Mr. Wynn that the argument really has been effectively waived on appeal but even addressing the merits as I think we did in fair detail in our brief, the components of the test set forth in Irish v. Fowler aren't met on this record. There are several components including the lack of any kind of affirmative action the fact that there's no causal connection between the alleged conduct of Mr. Wynn and any harm that she's alleged in this case and also that the conduct alleged of Mr. Wynn did not shock the conscience even on a deliberate and different standard. It would still have to meet a shocks the conscience component where it would have to be sufficiently egregious in order to be utterly outrageous as the court's terminology has used. And so therefore, based on the cases that we've cited, we believe that the law is relatively clear that what we're talking about in terms of non-physical conduct simply verbal harassment isn't sufficient to meet the shocks the conscience standard and in terms of no affirmative act that the cases not only Rivera but cases from other jurisdictions indicate that what occurred here as alleged with regard to Mr. Wynn didn't rise to the level of an affirmative act. And all of that case law, it's our position would give rise to qualified immunity in any event because there's neither clearly established law nor would a reasonable official in Mr. Wynn's position understand that the alleged conduct would give rise to such a claim. So unless the court has any questions. If I can take you a bit far afield, your sister said there's a difference between red flags and actual knowledge. Now, I know you have a number of arguments one would never ever reach that question as to your client, but I assume you've taken a look at that. What do you think the Title IX law is about red flags and actual knowledge? Well, I think, Your Honor, you give me a little more credit than I really do. As you probably know, there was no Title IX claim asserted against my client and I tend to rely on Ms. Huey for those kind of things as the representative of the district. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the Cross-Applicant Kavanaugh please introduce himself on the record to begin? He has five minutes. Good morning, Your Honors. May it please the Court, Joseph Podolsky for Andrew Kavanaugh. Your Honors, I'd like to focus on a few legal points specifically because my concerns coming into this argument are really the manner in which the Title IX claims are being conflated or grafted onto the claims that are made against Mr. Kavanaugh. The claims against Mr. Kavanaugh that the district court granted summer judgment on are bodily integrity claims, claims that her constitutional right to bodily integrity were violated because of the alleged sexual harassment at issue in this case. What we have, though, and what the district court found, was a record where there was admittedly no actual physical or sexual conduct from Mr. Kavanaugh towards Ms. Wadsworth. And because of that and the canvassing of this circuit's law, the court issued summer judgment on the substantive due process claim saying that there are no cases in this circuit of the Brown that say that one's bodily integrity can be violated with anything other than actual physical intrusions into one's bodily integrity. And so on the... Didn't we leave that, say that question has not been foreclosed in this circuit? I think it was in Brown. So it was Brown. There was the Cruz Arazo case as well. Those are substantive due process cases. They weren't Title IX cases. They were not school cases. They were whether or not there could be conscious, shocking behavior that violated one's bodily integrity, but based on instances that didn't actually physically violate one's bodily integrity. I think while the court left that open, the context of those cases is so far removed from the context of this case that those cases don't apply on the first instance to say definitively there was a substantive due process violation in this case. But then if we take it to the next level, which was the court's alternative holding, to then say that qualified immunity could be overcome in that circumstance where there are no cases, period, not even school cases, saying that that type of claim could be made in this circuit, I don't think that we could overcome the qualified immunity holding on that basis as well. And so that's really the crux of the district court's conclusion as to the substantive due process claim. On the equal protection claim, the court, I have a disagreement with the lower court in the sense that the comparator used to say that Ms. Wadsworth had met her evidentiary burden of proving comparators, or similarly situated comparators, was all students. And I think that we've addressed this in the papers, but the cases of this circuit of the Supreme Court say that that's not really the intent of the comparator analysis. The comparator analysis is something that has a discovery burden, an evidentiary burden, where one making that claim needs to show that other students who are similarly situated, not just all students, were treated, selectively treated, and impermissibly so under the Constitution. And in that case, there really isn't anything in the record to show that that type of discovery or burden was met in this case. And I think that's why the district court used the all students analysis, or alternatively said, well, there was this student, Brent Stewart, who gave testimony in this case, and so we'll use that as an alternative potential comparator, even though there's no allegations that make him similarly situated in any way. Alternatively, the record shows that, and I think that this is part of my concern with not wanting to see the Title IX claim conflated as against Mr. Kavanaugh, the record shows that the school administrators and teachers, they went out of their way to help students in need. That Mr. Kavanaugh, in fact, did that with other students, not just Ms. Wadsworth. And in the manner in which it is alleged in this case proves liability, but if we look at it outside of the cases, essentially providing money for things at school like school lunch and photos and SAT tests and clothing and stuff along those lines. And so I don't think that that actually, that the record doesn't show comparators, but then on top of that, the record shows that other students were similarly treated. Thank you, Your Honor. I'll rest. Your Honors have no other questions. Thank you. Thank you, Counsel. At this time, would Counsel for Cross-Appellant Wadsworth please reintroduce himself on the record? He has a three-minute rebuttal. Good morning. Eric LeBlanc on behalf of Appellee Cross-Appellant Ms. Wadsworth. I do want to address the waiver issue relating to Wen being the appropriate person. The claim was made, and you can read in the lower court's decision in the motion to dismiss that he said at that point Wen was not an appropriate person, but you can also see in our reply brief that we attempted to make the oral argument at summary judgment, and the court said, I've already decided that a motion to dismiss, I'm not looking to hear about that anymore. So it was brought up, and it hasn't been waived. So then couldn't you have appealed that specifically as part of this? We did appeal the motion to dismiss in the case as well. On that? Yeah, on the equal protection against Wen. I think your counsel's argument is that you didn't make that argument in your summary judgment motion, and you needed to, and that's why it's waived. So why is that wrong? Because as we cite in our reply brief, we did attempt to make the argument at summary judgment during oral argument in front of the judge. We had indicated, or the judge had indicated that that had been decided at motion to dismiss. No, I understand. My question is, why didn't you make it in your papers rather than just at oral? Normally things not raised in briefs are waived. You can't preserve them at oral arguments. Understood, but again, the judge had dealt with the issue at the motion to dismiss stage, which has been properly appealed here as well. To quickly move towards the equal protection claims against Mr. Kavanaugh and Mr. Wen, the Lipset decision from this court clearly states that sexual harassment can be grounds for an equal protection claim, and when we want to look for comparators, we have other testimony from other female students stating that Mr. Kavanaugh did not do this to them, and then when that's compared with the idea that these nicknames are unquestionably gendered, pretty girl, cupcake, etc., etc., that would give us a comparative of students that would not otherwise be called those names. As to the claim against Mr. Wen for equal protection, the standard is that the behavior or the official's action or inaction was affirmatively linked to the behavior. So here, Mr. Wen continually had... That's the equal protection standard? Yes, under Lipset. But you're not alleging any sexual harassment by him, right? How is that an equal protection claim? I'm just trying to understand. Mr. Wen was normalizing the gendered sexually aggressive behavior and took no action to stop it, and then, again, we also related to his actions after the investigation occurred, where he continued reaching out to Ms. Wadsworth and continued asking her to reach out to the family, sign this affidavit, transfer schools, etc., etc. And to touch on the substantive due process claim, again, the lower court urged this court to reconsider the idea of bodily integrity, particularly given where we are with psychological sexual harassment. I would, however, submit that in this case, there is evidence in the record that this sexual harassment did lead to a bodily intrusion on Ms. Wadsworth. She was found crying in the hallways, she fainted as a result of the emotional distress that she felt in this case, and those are all cited in the record, and that certainly does impact bodily integrity. When we get to the analysis of immunity, qualified immunity in this case, as I said, the Lipset case certainly deals with the equal protection side of things, where it says sexual harassment is enough to violate equal protection, and as to substantive due process, there's, the Shaney was cited in the mid-2000s, and it has been interpreted up through the years, and there are courts that have come out and said that these are actionable under substantive due process. Thank you. Your time is up. Thank you. Thank you, counsel. That concludes argument in these cases.